# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO,
## EASTERN DIVISION

| | |
|---|---|
| JOSE JAVIER and RAFAEL LIM, on behalf of themselves and all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BRIDGESTONE CORPORATION, BRIDGESTONE AMERICAS, INC., CONTINENTAL AKTIENGESELLSCHAFT, CONTINENTAL TIRE THE AMERICAS, LLC, THE GOODYEAR TIRE & RUBBER COMPANY, COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS MICHELIN, MICHELIN NORTH AMERICA, INC., NOKIAN TYRES PLC, NOKIAN TYRES INC., NOKIAN TYRES U.S. OPERATIONS LLC, PIRELLI & C. S.P.A., and PIRELLI TIRE LLC, | |
| Defendants. | |

**TABLE OF CONTENTS**

**PAGE NO.**

I.     INTRODUCTION .................................................................................................1

II.    JURISDICTION AND VENUE ..........................................................................4

III.   PARTIES .............................................................................................................6

    A.    Plaintiffs ...................................................................................................6

    B.    Defendants ................................................................................................7

         i.    Bridgestone Defendants ................................................................7

         ii.   Continental Defendants.................................................................7

         iii.  Goodyear Defendant .....................................................................8

         iv.  Michelin Defendants .....................................................................8

         v.   Nokian Defendants ........................................................................9

         vi.  Pirelli Defendants .......................................................................10

    C.    Agents and Co-Conspirators ..................................................................10

         i.    Defendants' Corporate Families Acted as Single Enterprises and Defendant Parent Companies Exercised Substantial Control Over Their U.S. Affiliates ..........................................11

         ii.   Defendants' Foreign Employees Organized the Conspiracy and Their United States Employees Facilitated the Conspiracy ................................12

         iii.  Defendants Who Engaged in Collusive Conduct Participated in Discussions on Behalf of Entire Corporate Families and Failed to Distinguish Between Corporate Entities in the Same Corporate Family...13

         iv.  The Nature of the Replacement Tires Industry Required Foreign Companies Named As Defendants Herein to Use Their United States Subsidiaries and Affiliates As Manufacturing Plants or Distribution and Sales Arms ...............................................14

IV.   FACTUAL ALLEGATIONS ............................................................................15

    A.    Replacement Tires ..................................................................................15

i

B.  Replacement Tires Market ..................................................................................15

C.  Defendants Engaged in Parallel Conduct ...........................................................17

D.  Plus Factors Suggest Defendants Colluded .........................................................24

    i.  The EC Investigation in the Replacement Tires Market...........................25

    ii.  Bridgestone Corporation Is A Known Repeat Offender of Antitrust Laws
    ..............................................................................................................................25

    iii.  The Replacement Tire Market Has Characteristics That Render It More
    Susceptible to Cartelization ......................................................................26

        1.  The Replacement Tires Market Is Highly Concentrated ..............26

        2.  The Replacement Tires Market Has High Barriers to Entry..........26

        3.  The Demand for Replacement Tires Is Inelastic Due to An
        Absence of Substitutes .................................................................27

        4.  The Replacement Tires Market Primarily Contains Homogenous
        Products.........................................................................................28

        5.  Defendants Had Motive and the Opportunity to Collude .............28

E.  CLASS ACTION ALLEGATIONS ....................................................................29

F.  PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY .........35

G.  THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS
..............................................................................................................................38

    i.  The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did
    Not and Could Not Discover Their Claims.................................................38

    ii.  Fraudulent Concealment Tolled the Statute of Limitations......................39

H.  CAUSES OF ACTION ......................................................................................40

First Cause of Action
Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)
Restraint of Trade (on behalf of Plaintiffs and the Nationwide Injunctive Class).40

Second Cause of Action
Violation of the State Antitrust Laws (on behalf of Plaintiffs and the Damages
Class or, Alternatively, on Behalf of the State Damages Classes) .......................42

Third Cause of Action
Violation of State Consumer Protection Laws (on behalf of Plaintiffs and the
Damages Class or, Alternatively, on Behalf of the State Damages Classes) ........75

Fourth Cause of Action
Unjust Enrichment (on behalf of Plaintiffs and the Damages Class or,
Alternatively, on Behalf of the State Damages Classes) .....................................106

PRAYER FOR RELIEF ............................................................................................107

JURY DEMAND ......................................................................................................109

## I.    INTRODUCTION

1.      Plaintiffs Jose Javier and Rafael Lim ("Plaintiffs"), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws.

2.      For all the marvel of today's vehicle safety systems (*e.g.*, cameras, sensors, and processors that help minimize driver error), a vehicle is still only as safe as the person driving it and the rubber that holds it to the road. This case is about replacement tires—hundreds of millions of which are sold in the United States for tens of billions of dollars each year. Manufacturers of replacement tires were motivated to fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires (defined below) due to the sudden and significant decrease in demand for Replacement Tires during the COVID-19 pandemic.

3.      This lawsuit is brought as a proposed class action against Defendants Bridgestone Corporation, Bridgestone Americas, Inc. (together, "Bridgestone"), Continental Aktiengesellschaft, Continental Tire the Americas, LLC (together, "Continental"), The Goodyear Tire & Rubber Company ("Goodyear"), Compagnie Générale des Établissements Michelin, Michelin North America, Inc. (together, "Michelin"), Nokian Tyres plc, Nokian Tyres Inc., Nokian Tyres U.S. Operations LLC (together, "Nokian"), Pirelli & C. S.p.A., and Pirelli Tire LLC (together, "Pirelli") (collectively, "Defendants") and unnamed co-conspirators, manufacturers, and/or suppliers of Replacement Tires, for engaging in a conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market in the United States for Replacement Tires.

Defendants effectuated their conspiracy by, *inter alia*, signaling price increases during earnings calls and other public statements and participating in industry meetings and coordinating supply reductions to keep prices artificially high.

4.    "Replacement Tires" are new replacement tires for passenger cars, vans, trucks, and buses.

5.    Plaintiffs seek to represent all persons and entities who, during the period from and including January 1, 2020 through such time as the anticompetitive effects of Defendants' conduct ceased ("Class Period"), indirectly purchased Replacement Tires in the United States, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants or any co-conspirator of Defendants.

6.    Defendants manufacture, market, and/or sell Replacement Tires throughout and into the United States. Defendants and their co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids, and allocate the market in the United States for Replacement Tires.

7.    On January 30, 2024, the European Commission ("EC") announced that it was carrying out unannounced inspections (also known as "dawn raids") at the premises of companies active in the tires industry in several countries in the European Union ("EU"). The EC was concerned that the inspected companies violated EU antitrust rules that prohibit cartels and restrictive business practices. The products subject to inspection were Replacement Tires for cars, vans, trucks, and buses sold. The EC was concerned that price coordination took place amongst the inspected companies, including through public communications.

8.    Each corporate group of Defendants named in this Complaint confirmed they were

the subject of antitrust raids by the EC.

9.      One Defendant is a known repeat offender of antitrust laws. On February 13, 2014, the United States Department of Justice ("DOJ") announced that Bridgestone Corporation had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere. Before that, on September 15, 2011, the DOJ announced that Bridgestone Corporation had agreed to plead guilty and to pay a $28 million fine for its role in conspiracies to rig bids and to make corrupt payments to foreign government officials in Latin America related to the sale of marine hose and other industrial products manufactured by the company and sold throughout the world.

10.     Defendants and their co-conspirators allegedly participated in a combination and conspiracy to suppress and eliminate competition in the Replacement Tires industry by agreeing to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices of Replacement Tires sold to consumers in the United States and globally. The combination and conspiracy engaged in by Defendants and their co-conspirators was an unreasonable restraint of interstate trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection, and unjust enrichment laws.

11.     As a direct result of Defendants' conduct to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market of Replacement Tires, Plaintiffs and the Classes (defined *infra*) paid artificially inflated prices for Replacement Tires during the Class Period and have thereby suffered antitrust injury to their business or property.

12.     The facts surrounding the Replacement Tires cartel were unknown to Plaintiffs and

3

the public until January 30, 2024 when it became public that the EC carried out unannounced inspections at the premises of Defendants over the suspected Replacement Tires cartel.

## II.    JURISDICTION AND VENUE

13.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against the Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, consumer protection, and unjust enrichment laws, and seek to obtain restitution, recover damages, and secure other relief against the Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

14.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 16), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the Classes are citizens of a state different from the Defendants; and (2) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

15.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and the Defendants reside, are

licensed to do business in, are doing business in, have agents in, and are found in or transact business in this District.

16.     This Court has *in personam* jurisdiction over the Defendants because the Defendants either directly or through their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Replacement Tires throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; and (d) were engaged in an illegal conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. The Defendants also conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States.

17.     The Defendants engaged in conduct that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects on interstate commerce within the United States.

18.     The activities of the Defendants directly targeted the Replacement Tires market in the United States and were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. The Defendants' products are sold in the flow of United States interstate commerce.

19.     Replacement Tires manufactured abroad by the Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.

5

To the extent any Replacement Tires is purchased in the United States, and such Replacement Tires do not constitute import commerce, the Defendants' activities with respect thereto, as more fully alleged herein during the Class Period (defined *infra*), had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, caused antitrust injury to Plaintiffs and members of the Classes in the United States.

20.     By reason of the unlawful activities hereinafter alleged, the Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Defendants directly and through their agents, engaged in activities affecting all states, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market in the United States for Replacement Tires. The conspiracy unreasonably restrained trade and adversely affected the market for Replacement Tires.

21.     The Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Replacement Tires.

III.     **PARTIES**

A.     **Plaintiffs**

22.     Plaintiff **Jose Javier** is a California resident who purchased at least one Replacement Tire indirectly from one of the Defendants during the Class Period and was injured as a result.

23.     Plaintiff **Rafael Lim** is a Nevada resident who purchased at least one Replacement Tire indirectly from one of the Defendants during the Class Period and was injured as a result.

B.      **Defendants**

    i.      **Bridgestone Defendants**

24.      Defendant **Bridgestone Corporation** ("Bridgestone Japan") is a Japanese corporation with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Defendant Bridgestone Japan – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that were sold and purchased throughout the United States, including in this District, during the Class Period. Bridgestone Corporation is the world's largest tire and rubber company. Bridgestone tires include Firestone tires.

25.      Defendant Bridgestone Americas, Inc. ("Bridgestone U.S.") is a Nevada corporation with its principal place of business at 200 4th Avenue, Suite 100, Nashville, Tennessee, 37201. It is a subsidiary of and wholly owned and/or controlled by its parent, Bridgestone Japan. Defendant Bridgestone U.S. manufactured, marketed, and/or sold Replacement Tires that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent. Bridgestone U.S. has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.

    ii.      **Continental Defendants**

26.      Defendant **Continental Aktiengesellschaft** ("Continental Germany") is a German corporation with its principal place of business at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental Germany – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that were sold and

7

purchased throughout the United States, including in this District, during the Class Period.

27.     Defendant **Continental Tire the Americas, LLC** ("Continental U.S.") is an Ohio limited liability company with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, South Carolina 29707. It is a subsidiary of and wholly owned and/or controlled by its parent, Continental Germany. Continental U.S. manufactured, marketed, and/or sold Replacement Tires that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its German parent. Continental U.S. has manufacturing facilities Georgia, Illinois, South Carolina, and Missouri.

### iii.     Goodyear Defendant

28.     Defendant **The Goodyear Tire & Rubber Company** ("Goodyear") is an Ohio corporation with its principal place of business at 200 Innovation Way, Akron, Ohio 44316. Defendant Goodyear – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that were sold and purchased throughout the United States, including in this District, during the Class Period. Goodyear Replacement Tires include Cooper Tires, Dunlop, and Kelly tires.

### iv.     Michelin Defendants

29.     Defendant **Compagnie Générale des Établissements Michelin** ("Michelin France") is a French corporation with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. Michelin France – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that were sold and purchased throughout the United States, including in this

District, during the Class Period. Michelin tires include BF Goodrich and Uniroyal tires.

30.     Defendant **Michelin North America, Inc.** ("Michelin U.S.") is a New York corporation with its principal place of business at One Parkway South, Greenville, South Carolina 29615. It is a subsidiary of and wholly owned and/or controlled by its parent, Michelin France. Michelin U.S. manufactured, marketed, and/or sold Replacement Tires that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its French parent. Michelin U.S. has manufacturing facilities in Alabama, Oklahoma, and South Carolina. Georgia, Illinois, Missouri, and South Carolina.

### v.     Nokian Defendants

31.     Defendant **Nokian Tyres plc** ("Nokian Finland") is a Finnish corporation with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Finland – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that were sold and purchased throughout the United States, including in this District, during the Class Period.

32.     Defendant **Nokian Tyres Inc.** ("Nokian U.S.") is a Delaware corporation with its principal place of business at 520 Nokian Tyres Drive, Dayton, Tennessee 37321. It is a subsidiary of and wholly owned by its parent, Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of and/or controlled by Nokian Finland. At all times during the Class Period, its activities in the United States were under the control and direction of Nokian Finland. Nokian U.S. has a manufacturing facility in Tennessee.

33.     Defendant **Nokian Tyres U.S. Operations LLC** is a Tennessee limited liability

company with its principal place of business at 520 Nokian Tyres Drive, Dayton, Tennessee 37321.
It is a subsidiary of and wholly owned by its parent, Nokian Tyres U.S. Holdings Inc., and an
indirect subsidiary of and/or controlled by Nokian Finland. At all times during the Class Period,
its activities in the United States were under the control and direction of Nokian Finland.

**vi.      Pirelli Defendants**

34.      Defendant **Pirelli & C. S.p.A.** ("Pirelli Italy") is an Italian corporation with its
principal place of business at Viale Piero e Alberto Pirelli n. 25 (reception in Via Bicocca degli
Arcimboldi, 3) 20126 Milan, Italy. Pirelli Italy – directly and/or through its subsidiaries, which it
wholly owned and/or controlled – manufactured, marketed, and/or sold Replacement Tires that
were sold and purchased throughout the United States, including in this District, during the Class
Period.

35.      Defendant **Pirelli Tire LLC** ("Pirelli U.S.") is a Delaware limited liability
company with its principal place of business located at 100 Pirelli Drive, Rome, Georgia 30161.
It is a subsidiary of and wholly owned and/or controlled by its parent, Pirelli Italy. Pirelli U.S.
manufactured, marketed, and/or sold Replacement Tires that were purchased throughout the
United States, including in this District, during the Class Period.

**C.      Agents and Co-Conspirators**

36.      Various persons, partnerships, sole proprietors, firms, corporations, and individuals
not named as defendants in this lawsuit, and individuals, the identities of which are presently
unknown, have participated as co-conspirators with Defendants in the offenses alleged in this
Complaint, and have performed acts and made statements in furtherance of the conspiracy or in
furtherance of the anticompetitive conduct.

10

37.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

      **i.**      **Defendants' Corporate Families Acted as Single Enterprises and Defendant Parent Companies Exercised Substantial Control Over Their U.S. Affiliates**

38.     When Defendants reached agreement to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires—whether as a result of formal or informal meetings or discussions arranged to implement or enforce cartel purposes and agreements—each of the Defendants meant for their collusive agreements to impact the pricing for all Replacement Tires subject to the cartel's anticompetitive efforts regardless of where they were sold.

39.     As part of a single, integrated global enterprise, Defendants manufacture, market, and/or sell Replacement Tires. They sell their Replacement Tires around the world, including in the United States. Accordingly, to achieve the cartel's anticompetitive aims, Defendants effectuated the cartel by agreeing to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires they sold to their customers.

40.     Some foreign-based Defendants established United States subsidiaries not only to manufacture, market, and/or sell their Replacement Tires in the United States but also to effectuate and achieve the cartel's aims and purposes. Without doing so, these corporate entities would have had to perform such functions themselves. These corporate entities chose not to do so and instead

11

established corporate subsidiaries and affiliates that perform functions at the direction of and are controlled by their officers abroad.

41.    The United States' subsidiaries of foreign-based corporate parents or affiliates have no authority to set prices below the prices for Replacement Tires agreed to by the foreign-based corporate parent or affiliate. For these subsidiaries, pricing authority was held by their foreign-based corporate parent or affiliate.

42.    Because their foreign-based corporate parent or affiliate had significant control over all aspects of their business (*e.g.*, type of Replacement Tires, prices, supply, business strategy, customer development and relations, sales, personnel decisions), the United States subsidiaries often operated as little more than manufacturing pants or distribution and sales offices for their foreign-based corporate parent or affiliate. As a result, the United States subsidiaries were—as intended—able to advance the cartel aims in the United States.

        **ii.    Defendants' Foreign Employees Organized the Conspiracy and Their United States Employees Facilitated the Conspiracy**

43.    The Defendants organized the Replacement Tires conspiracy at a high-level within their respective corporate families. Both executives and subordinate employees carried out the conspiracy. Additionally, given the nature of the industry, the subsidiaries and affiliates implemented conspiratorial agreements within their respective corporate families.

44.    Each of the corporate families alleged herein (*i.e.*, Bridgestone, Michelin) operate not as separate corporate entities but as a single enterprise. Each corporate family holds itself out to the public as a single, integrated enterprise. Each of the parent and/or foreign entities named in this case operate a hierarchical corporate structure wherein they treat subsidiaries not as separate corporate entities under their own control but as mere divisions of the corporate parent.

45.     Each corporate parent alleged herein also coordinates and manages the finances and meetings between officers from each of the different subsidiaries to facilitate an integrated enterprise to link the various supply chains to the corporate families' clients. The parent Defendants dominate and control the finances, policies, and business practices of their various subsidiaries, including the United States subsidiaries.

46.     In light of the fact that the U.S. subsidiaries named in this Complaint were treated as mere manufacturing plants or distribution and sales offices of the foreign-based corporate parent affiliate, they were generally kept informed about the competitor meetings and discussions occurring abroad and were not permitted to undercut the pricing agreements reached during those meetings and discussions.

47.     By virtue of their integrated enterprises, and by virtue of the other allegations in this complaint, each Defendant entered the Replacement Tires conspiracy alleged herein on behalf of, and reported these meetings and discussions to, their respective corporate family and United States subsidiaries. In fact, upon information and belief, the foreign-based corporate parents and affiliates often provided pricing instructions to their United States subsidiaries, which acted as their manufacturing, distribution, or sales arms in the United States.

### iii.     Defendants Who Engaged in Collusive Conduct Participated in Discussions on Behalf of Entire Corporate Families and Failed to Distinguish Between Corporate Entities in the Same Corporate Family

48.     In meetings and discussions between the Defendants in furtherance of the Replacement Tires conspiracy, Plaintiffs allege which corporate family was represented in a particular meeting or communications. This is because the individual participants in the conspiratorial meetings and discussions did not distinguish between entities within a particular

corporate family, referring to themselves or others, for example, merely as "Continental" or "Pirelli." Indeed, the officers from Defendants appear to have attended the conspiratorial meetings on behalf of their entire corporate families, including their respective United States' subsidiaries. Further, because of their generic uses of the Defendants' names, individual participants in the conspiratorial meetings and discussions did not always know the specific corporate affiliation of their counterparts nor did they distinguish between entities within the respective corporate families. Participants in the conspiratorial meetings entered into agreements on behalf of and reported these meetings and discussions to their respective corporate families and United States affiliates. As a result, the entire corporate family was represented in meetings and discussions by their agents and were parties to the agreements reached in those meetings.

49.    Further, Defendants knew the individuals at the conspiratorial meetings represented their entire respective corporate family; otherwise, Defendants would not have entered into the illegal agreements if affiliate companies could simply undercut the agreements reached.

### iv.    The Nature of the Replacement Tires Industry Required Foreign Companies Named As Defendants Herein to Use Their United States Subsidiaries and Affiliates As Manufacturing Plants or Distribution and Sales Arms

50.    Defendants' United States subsidiaries are wholly owned and/or controlled by their foreign parents or affiliates. As part of each Defendant's global enterprise, its United States subsidiary or affiliate assists the foreign corporate parent or affiliate with manufacture, distribution, and/or sale of Replacement Tires to consumers in the United States. United States' subsidiaries facilitate orders for Replacement Tires with parents or affiliates overseas. That is, the foreign parent or affiliate manufactures Replacement Tires abroad and ships the Replacement Tires directly to the United States, often through its United States subsidiaries or affiliates. Indeed, the foreign parents

14

and affiliates make millions of dollars of "sales" annually to their United subsidiaries and affiliates as part of their global business.

51.     In sum, the foreign-based Defendants sell directly to the United States and operates their Replacement Tires business as a single global enterprise with their subsidiaries and affiliates in the United States.

## IV.     FACTUAL ALLEGATIONS

### A.     Replacement Tires

52.     In the United States, there were over 230 million licensed drivers in 2021 and over 280 million registered vehicles in 2022. The tread for original tires wears down every time someone drives – even with proper maintenance – and tire replacement is necessary for safe driving. Generally, a properly maintained set of good quality tires can have a useful life of 50,000 miles or almost four years depending on how a person's travels compare to the 13,500 average annual miles driven. New tires are typically the same size, type, and quality as the ones they are replacing. It is common to replace all four tires at the same time, especially on all-wheel drive vehicles. Replacement Tires with sufficient tread give vehicles maximum traction for accelerating and braking, as well as keeping a grip around curves on the road.

### B.     Replacement Tires Market

53.     Automotive tires can either be installed in new vehicles as original equipment or in any vehicle to replace existing tires. Replacement Tires are the subject of this Complaint.

54.     Defendants are the largest global tire manufacturers. Bridgestone is the largest tire and rubber company. It has 130 manufacturing plants and R&D facilities in 25 countries. It sells products in more than 150 countries. Michelin has 123 manufacturing plants and nine R&D

facilities in 26 countries. Goodyear has 57 manufacturing facilities in 23 countries. Pirelli has 18 factories located in 12 countries. Continental has 519 locations for production, research, and development and sells Replacement Tires in 57 countries and markets.

55.     Bridgestone, Goodyear, and Michelin make up two-thirds of the replacement tire market in the United States. Bridgestone was the global leader in tire manufacturing in 2021 with revenues of $30 billion. Michelin ranked second with revenues of $28 billion in the same year. Goodyear ranked third with revenues of over $17 billion in the same year. The market for Replacement Tires in the United States was approximately $61 billion in 2022.

## Tire Market Share



*Source:* https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-
are-getting-bigger-how-can-the-davids-compete/

56.     The price of Replacement Tires was stable in the 2010s, increasing slowly by small increments. In the last four years, Replacement Tire prices have spiked, driven by lockstep increases by Defendants (*see below graph*).



*Source:* https://fred.stlouisfed.org/series/PCU32621132621101

57.     In 2023, Pro Publica reported that "the average price of tires has risen 21.4% over the past two years, more than 70% higher than core inflation."[1] Replacement Tire prices remained high despite easing inflation and dissipating effects of the pandemic. Traqline reported that "[a]s of June 2023, the industry average price paid . . . for tires was $220."[2]

### C.     Defendants Engaged in Parallel Conduct

58.     Defendants engaged in parallel conduct during the Class Period. They effectuated several conspiratorial prices increases for Replacement Tires during the Class Period. The following table summarizes Defendants' price increases on Replacement Tires for passenger and light trucks between 2021 and 2023:

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Michelin | February 1, 2021 | Up to 5% |
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |

---

[1] Michael Grabell, "Overinflated: The Journey of a Humble Tire Reveals Why Prices Are Still So High," PRO PUBLICA (May 3, 2023), *available at* https://www.propublica.org/article/inflation-tires-rubber-imports- high-prices.

[2] "Tire Market: Top Brands & Retailers, Market Share, Retail Sales Data, & Trends in 2023," TRAQLINE (Oct. 20, 2023), available at https://www.traqline.com/newsroom/blog/tire-market-top-brands-retailers- market-share-retail-sales-data-trends-in-2023/.

| Goodyear | April 1, 2021 | Up to 8% |
|---|---|---|
| Pirelli | April 15, 2021 | Up to 7% |
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |
| Continental | April 1, 2022 | Undisclosed |
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |
| Michelin | June 1, 2022 | 5-12% |
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |
| Michelin | January 1, 2023 | Up to 9% |
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

59. The following are illustrative examples of Defendants' parallel price increases:

60. Effective February 1, 2021, Michelin increased prices on Michelin and BFGoodrich brand passenger and light truck Replacement Tires as well as on select commercial truck tires up to 5%. Michelin vaguely claimed the price increases were "due to changing business dynamics of

18

the U.S. market."[3]

61.    Effective March 1, 2021, Continental increased prices on select passenger and light truck Replacement Tires in the U.S. within the Continental and General brands by an undisclosed amount.[4]

62.    Effective April 1, 2021, Michelin and Goodyear both increased prices on Replacement Tires. Michelin increased prices on select Michelin, BFGoodrich, and Uniroyal passenger and light truck Replacement Tires up to 8%, this time attributing the price increase to "changing business dynamics and rising costs of raw materials."[5] Goodyear increased prices of its Goodyear, Dunlop, and Kelly-brand Replacement Tires by up to 8%.[6]

63.    That same month, effective April 15, 2021, Pirelli also increased prices on passenger and light truck Replacement Tires in the United States up to 7%. Pirelli likewise claimed the price increases were due to "higher price of raw materials and changing market conditions."[7]

64.    Effective May 1, 2021, Bridgestone increased prices on select Bridgestone and Firestone brand passenger and light truck Replacement Tires up to 8% in the United States and Canada. Bridgestone similarly attributed the price increases were due to "increased business costs

---

[3] https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raise-consumer-commercial-prices-on-feb-1-2020-12-19

[4] https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plans-price-hike-on-plt-tires-2021-01-06

[5] https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01

[6] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03

[7] https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09

and other market dynamics."[8]

65.     Effective June 1, 2021, Goodyear increased prices again on Goodyear, Dunlop, and Kelly consumer Replacement Tires by up to 8%. Not surprisingly, Goodyear attributed the increase on "changing market dynamics in the industry and [a] reflect[ion of] the strong value of the Goodyear brands"—using identical wording from its April 1, 2021 price increase.[9]

66.     Effective July 1, 2021, Michelin, Continental, and Pirelli implemented further price increases on Replacement Tires. Michelin increased prices on certain Michelin, BFGoodrich, and Uniroyal passenger and light truck Replacement Tires by up to 6%. Continental increased prices on select Continental and General brand passenger and light truck Replacement Tires by an undisclosed amount. Pirelli increased prices of passenger and light truck Replacement Tires by up to 6%, attributing the increases to higher price of raw materials and changing market conditions, like the other Defendants.[10]

67.     Effective September 1, 2021, Michelin and Goodyear implemented price increases on Replacement Tires. Michelin increased prices on certain Michelin, BFGoodrich, and Uniroyal passenger and light truck Replacement Tires by up to 14%. Goodyear increased prices on passenger and light truck Replacement Tires by up to 8%.[11]

68.     Effective October 1, 2021, Continental and Pirelli increased prices on Replacement

_____

[8] https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24
[9] https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-tire-price-hike
[10] https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike
[11] https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper- consumer-tire-prices-are-going-up-modern-tire-dealer

Tires. Continental increased prices on some Continental and General passenger and light truck Replacement Tires by an undisclosed amount.[12] Pirelli increased prices on car and light truck Replacement Tires by up to 8%, attributing it to higher prices of raw materials and changing market conditions.[13]

69.     The following year saw further price increases for Replacement Tires. Effective January 1, 2022, Michelin implemented price increases up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and light truck Replacement Tires.[14] Around the same time, following suit, Goodyear raised its prices on Replacement Tires by up to 12%.[15]

70.     Days later, effective January 3, 2023, Continental increased prices on select Continental and General passenger and light truck Replacement Tires by an undisclosed amount.[16]

71.     Weeks later, effective January 17, 2022, Pirelli increased its prices for car and light truck Replacement Tires by up to 10%.[17]

72.     Effective April 1, 2022, Continental, Michelin, and Bridgestone increased Replacement Tire prices again. Continental increased its price on select Continental and General passenger and light trucks Replacement Tires by an amount that varied across specific products by brand.[18] Michelin increased prices by 5% on the majority of select passenger and light truck Replacement Tires.[19] Bridgestone increased prices by up to 10% on non-winter Bridgestone,

---

[12] https://www.tirereview.com/continental-tire-announces-price-increase/

[13] https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1

[14] https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html

[15] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1

[16] https://www.tirereview.com/continental-tire-announces-price-increase-2/

[17] https://www.tirereview.com/pirelli-price-increases/

[18] https://www.tirereview.com/continental-tire-announces-price-increase-3/

[19] https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber

Firestone, and Fuzion passenger and light truck Replacement Tires.[20]

73.     Days later, effective April 11, 2022, Pirelli increased its prices for Replacement Tires by up to 10%.[21]

74.     Effective June 1, 2022, Continental and Michelin each increased prices on tires. Continental increased prices on Continental and General-branded passenger and light truck Replacement Tires by an undisclosed amount.[22] Michelin increased prices on most of its passenger and light truck Replacement Tires from 5-12%.[23]

75.     Effective June 15, 2022, Pirelli increased its prices for car and light truck Replacement Tires by up to 10% soon thereafter.[24]

76.     Effective July 1, 2022, Bridgestone increased prices by up to 10% on consumer Replacement Tires.[25]

77.     Effective October 1, 2022, Bridgestone and Continental both increased prices on Replacement Tires. Bridgestone increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck Replacement Tires by up to 9%.[26] Continental increased its price on select Continental and General passenger and light trucks Replacement Tires.

78.     The following year saw more price increases for Replacement Tires. Effective January 1, 2023, Michelin and Bridgestone each increased their Replacement Tire prices. Michelin

---

%20and%20associated%20supplies,2%2C%202022

[20] https://www.tirereview.com/bridgestone-price-increase-2/

[21] https://www.tirereview.com/pirelli-increases-price-for-tires/

[22] https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1

[23] https://www.tirereview.com/michelin-price-increase/

[24] https://www.tirereview.com/pirelli-increase-prices-tires/

[25] https://www.tirereview.com/bridgestone-increase-prices/;

[26] https://www.tirereview.com/bridgestone-price-increase-3/

increased prices on select passenger and light trucks Replacement Tires by up to 9%.[27] Bridgestone increased its prices on passenger and light truck Replacement Tires by an undisclosed amount.[28]

79.    Effective January 15, 2023, Pirelli increased its prices for car and light truck Replacement Tires by up to 10%.[29]

80.    Defendants' price increases significantly exceed any increased costs they may have faced. For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear's Chief Financial Officer informed investors that "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[30]

81.    Defendants' sales volume also did not suffer due to price increases, which would have occurred in a competitive market. For instance, Continental's sales volume increased by 19.3% in 2022. Its 2022 annual report indicates "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[31]

82.    In early 2022, Goodyear's Chief Administrative Officer Darren Wells reiterated on an earnings calls that its "increase in the replacement Tire prices more than offset [Goodyear's] costs."[32]

83.    Despite Defendants' claims regarding raw material shortages and costs, Defendants

---

[27] https://www.tirereview.com/michelin-price-increases/
[28] https://www.tirereview.com/bridgestone-americas-increased-prices/
[29] https://www.tirereview.com/pirelli-increase-prices-tires/
[30] https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call-transcript/
[31] https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf
[32] Goodyear, Q1 2022 Interim Results Earnings Call Transcript (May 6, 2022), available at: https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022-results-earnings-call

do not appear to have faced any production disruptions. In May 2022, a spokesman for Bridgestone reported: "We monitor all critical raw materials and global logistics closely and do not foresee any impacts to our supply at this time."[33]

84.     In mid-2022, during a conference call with investors, Goodyear's Darren Wells confirmed that his company was monitoring competitor pricing: "we've got to acknowledge that we've got major competitors who have announced 2 or 3 price increases during calendar year '22. And Goodyear, North America has announced one increase of up to 12% on January 1. Now the announcements of our competitors generally have been in lower amounts, but there have been a couple of them that have been double digits. So we have to acknowledge that. And then if we go back to last year, Goodyear announced 3 price increases of up to 8% during 2021. And our major competitors announced 3 or 4 price increases generally as well, some of which were unspecified in amounts, but most of which were in the mid-single digits. Yes. So those are the announcements that we've seen."[34]

**D.     Plus Factors Suggest Defendants Colluded**

85.     Various plus factors constituting circumstantial evidence are present here and show that Defendants plausibly colluded on Replacement Tire prices. These plus factors, when viewed in conjunction with the parallel price hikes describe *supra*, establish that Defendants were not engaged in merely oligopolistic price maintenance or price leadership but rather in a collusive agreement to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and

---

[33] Emmet White, How Tire Manufacturers Averted Crisis—And Kept Rolling, Autoweek (May 27, 2022).

[34] Goodyear, Q1 2022 Interim Results Earnings Call Transcript (May 6, 2022), available at: https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022-results-earnings-call.

allocate the market for Replacement Tires.

### i.    The EC Investigation in the Replacement Tires Market

86.    The first plus factor is a government investigation into Defendants' potential collusion. As discussed, *supra*, the EC announced that it was carrying out dawn raids at the premises of companies active in the tires industry in several countries in the EU. The EC was concerned that the inspected companies violated EU antitrust rules that prohibit cartels and restrictive business practices. The products subject to inspection were Replacement Tires for cars, vans, trucks, and buses sold.

87.    Each corporate group of Defendants named in this Complaint confirmed they were the subject of antitrust raids by the EC.

### ii.    Bridgestone Corporation Is A Known Repeat Offender of Antitrust Laws

88.    Bridgestone has previously pleaded guilty to violating the antitrust laws. As stated, *supra*, on February 13, 2014, DOJ announced that Bridgestone Corporation had agreed to plead guilty and pay a $425 million criminal fine for its role in a conspiracy to fix prices of anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

89.    Before that, on September 15, 2011, the DOJ announced that Bridgestone Corporation had agreed to plead guilty and to pay a $28 million fine for its role in conspiracies to rig bids and to make corrupt payments to foreign government officials in Latin America related to the sale of marine hose and other industrial products manufactured by the company and sold throughout the world.

### iii.    The Replacement Tire Market Has Characteristics That Render It More Susceptible to Cartelization

90.    The second plus factor present here is cartel susceptibility. The Replacement Tires market is conducive to anticompetitive and unlawful conduct because of its structure and other characteristics, which make collusion particularly attractive. Specifically, the Replacement Tires market: (1) has high barriers to entry; (2) is highly concentrated; (3) has inelastic demand and an absence of substitutes; and (4) has homogenous products.

### 1.    The Replacement Tires Market Is Highly Concentrated

91.    Defendants dominate the Replacement Tires market globally and in the United States (*see supra*). A highly concentrated market is more susceptible to collusion and other anticompetitive practices. The Replacement Tires market has a smaller group of competitors (*i.e.*, the five corporate groups of Defendants), which can successfully solve the coordination and trust problems that can prevent cartel formation or destabilize an existing cartel.

### 2.    The Replacement Tires Market Has High Barriers to Entry

92.    A market with high barriers to entry is also more conducive to collusion. A collusive arrangement that maintains prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

93.    There are substantial barriers that preclude, reduce, or make more difficult, entry into the Replacement Tires market. A new entrant into the business would face costly and lengthy startup costs, including multi-million-dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and skilled labor.

94.     The high barriers to entry allow the Defendants to control prices and output for at least two reasons. First, manufacturing Replacement Tires requires high capital investments to establish manufacturing plants that can produce Replacement Tires at a large enough scale to be profitable. Second, Defendants have acquired extensive intellectual property protecting their Replacement Tires.

95.     As evidence of the high barriers to entry, there are few Replacement Tires manufacturers. The five Defendants control most of the Replacement Tires market globally and in the United States.

### 3.     The Demand for Replacement Tires Is Inelastic Due to An Absence of Substitutes

96.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase. Demand elasticity affects whether price-fixing is likely to be profitable.

97.     For a cartel to profit from raising prices above competitive levels, demand must be inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

98.     Demand for Replacement Tires is inelastic because replacing tires is critical. Consumers cannot defer replacing tires indefinitely, especially when tires need to be replaced.

Since the demand for Replacement Tires is highly inelastic, it means that consumers are not very responsive to changes in price.

### 4. The Replacement Tires Market Primarily Contains Homogenous Products

99. Defendants' Replacement Tires are largely interchangeable. Tires are commodity-like products. Most tire manufacturers label tires with the tire's type, width, aspect ratio, construction type, diameter, load index, and speed rating.[35]

100. Markets with homogenous products are more susceptible to cartelization. When products in a market are homogenous, as they are in the Replacement Tires market, it is easier for co-conspirators to fix prices, especially if they have similar cost structures. Here, although each Defendant manufactures different types of Replacement Tires, they reached agreement to raise prices across the board or, in some instances, on certain types of Replacement Tires.

### 5. Defendants Had Motive and the Opportunity to Collude

101. The third plus factor present in this case involves Defendants having motive and opportunity to collude under the guise of legitimate business opportunities and to form acts necessary for the operation and furtherance of the conspiracy.

102. The Replacement Tire industry provided many opportunities for Defendants to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires in the United States. Each corporate group of Defendants is a member of the U.S. Tire Manufacturers Association ("USTMA"). USTMA is the national trade association for tire manufacturers in the United States. Senior executives for various Defendants currently serve

---

[35] Firestone, What Do the Numbers on My Tires Mean? (Jul. 31, 2023), available at https://www.firestonecompleteautocare.com/blog/Tires/what-do-numbers-on-Tires-mean/.

on USTMA's Board of Directors. USTMA holds numerous meetings in any given year.

103.    USTMA meetings provided Defendants with opportunities to conspire. Defendants had meetings and discussions through these associations, opening communications between them. These opportunities allowed Defendants to fix prices on multiple products and reach accords on production levels, currency exchange rates, market allocation, and cartel enforcement mechanisms. Making these decisions entails intercompetitor discussions, which USTMA facilitated. UTSMA also provided a forum for Defendants to exchange price information, signal prices, and share price-related documents.

### E.    CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following classes ("Nationwide Injunctive Class") under Sections 1 and 2 of the Sherman Act (15 U.S.C. § 1):

> All natural persons and entities who indirectly purchased at least one Replacement Tire for their own use and not for resale during the period from and including January 1, 2020 through the present that was manufactured or sold by the Defendants, or any current or former affiliate thereof.

105.    Plaintiffs also bring this action on behalf of themselves and as a class of purchasers from the Indirect Purchaser States under Rule 23(a) and (b)(2), seeking damages pursuant to state antitrust and consumer protection laws as well as common law unjust enrichment on behalf of the following class ("Damages Class"):

> All natural persons and entities who indirectly purchased at least one Replacement Tire for their own use and not for resale in one of the Indirect Purchaser States during the period from and including January 1, 2020 through the present that was manufactured or sold by the Defendants, or any current or former affiliate thereof.

106. The "Indirect Purchaser States," for purposes of this Complaint, are Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

107. The Nationwide Injunctive Class and the Damages Class are referred to herein as the "Classes" unless otherwise indicated. Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and direct purchases of Replacement Tires. Plaintiffs reserve the right to amend the aforementioned definitions if discovery and further investigation reveal that they should be expanded or otherwise modified.

108. Plaintiffs properly bring this action as a class action under Rule 23(a) for the following reasons:

a. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The Classes are so numerous and geographically dispersed throughout the United States that the joinder of all Class Members is impracticable. While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believe that there are tens of thousands of members in each Class. The precise number of Class Members can be ascertained through discovery.

b. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):**

There are questions of law and fact common to the Classes which predominate over any questions that may affect particular Class Members. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

i.      Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to maintain the prices of Replacement Tires sold in the United States;

ii.     The identity of the participants of the alleged conspiracy;

iii.    The duration of the alleged conspiracy and the acts carried out by the Defendants and their co-conspirators in furtherance of the conspiracy;

iv.    Whether the alleged conspiracy violated the Sherman Act;

v.     Whether Defendants and their alleged horizontal competitors agreed or combined to restrain competition and exclude competitors from the Replacement Tires market;

vi.    Whether the alleged conspiracy violated state antitrust and/or consumer protection laws;

vii.   Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Damages Class, thereby entitling Plaintiffs and the members of the Damages Class to

disgorgement of all benefits derived by the Defendants;

viii.   Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the property of Plaintiffs and the members of the Classes;

ix.   The effect of the alleged conspiracy on the prices of Replacement Tires sold in the United States during the Class Period;

x.   Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

xi.   Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

xii.   The appropriate injunctive and related equitable relief for the Nationwide Class; and

xiii.   The appropriate class wide measure of damages for the Damages Class.

c.   **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of the claims of Class Members. Plaintiffs and the Classes have been injured by the same wrongful practices. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of the Classes and are based on the same legal theories.

d.   **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will

fairly and adequately protect the interests of the Classes in that they have no interests antagonistic to those of the other Class Members, and Plaintiffs have retained attorneys experienced in antitrust class actions and complex litigation.

109.    This action is properly brought as a class action under Rule 23(b) for the following reasons:

a.    **Class Action Status (Fed. R. Civ. P. 23(b)(1)):** Class action status in this action is warranted under Rule 23(b)(1)(A) because  prosecution of separate actions by Class Members would create a risk of establishing  incompatible standards of conduct for Defendants. Class action status is also warranted under Rule   23(b)(1)(B) because prosecution of separate actions by Class Members would create a   risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members  not  parties  to  this  action,  or  that  would substantially impair or impede their ability to protect their interests.

b.    **Declaratory and Injunctive Relief (Fed. R. C. P. 23(b)(2)):** Certification under Rule 23(b)(2) is warranted because  Defendants acted or refused to act  on  grounds  generally  applicable  to  the  Classes,  thereby  making appropriate  final  injunctive,  declaratory,  or  other  appropriate  equitable relief with respect to the  Classes as a whole.

c.    **Superiority (Fed. R. Civ. P. 23(b)(3)):** Certification under Rule 23(b)(3) is appropriate because  questions of law or fact common to Class Members

predominate over any questions affecting only individual members, and class action treatment is superior to the other available   methods for the fair and efficient adjudication of this controversy.

d.    The Classes are ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each Class Member were infringed or violated in the same fashion.

110.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.    Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b.    This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

c.    Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

d.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

### F. PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

111. In the Replacement Tires market, price competition has been restrained or eliminated because Defendants exchanged competitively sensitive information with each other for the purpose of fixing, artificially raising, maintaining and/or stabilizing prices, rigging bids for, and allocating the market for Replacement Tires, thereby raising prices of Replacement Tires.

112. The Defendants' conspiracy had the following effects, among others:

    a.    The prices of Replacement Tires have been maintained at artificially inflated levels;

    b.    Price competition has been restrained or eliminated with respect to Replacement Tires;

    c.    Indirect purchasers of Replacement Tires have been deprived of free and open competition; and

    d.    Indirect purchasers of Replacement Tires paid artificially inflated prices.

113. These antitrust injuries are of the type that the antitrust laws were meant to punish and prevent.

114. During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Replacement Tires. Replacement Tire retailers passed on inflated prices to Plaintiffs and the members of the Classes. Those overcharges have unjustly enriched the Defendants. Replacement Tires follows a traceable physical chain of distribution from the Defendants to Replacement Tire retailers (*e.g.*, Walmart, Costco, Firestone, and Goodyear) to Plaintiffs and the members of the Classes, and any cost changes attributable to Replacement Tires can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

115.    Just as Replacement Tires can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers affect prices paid by indirect purchasers. Here, the inflated prices of Replacement Tires resulting from the Defendants' anticompetitive and unlawful conduct have been passed on to Plaintiffs and the other members of the Classes by Replacement Tire retailers.

116.    The economic and legal literature has recognized that unlawful overcharges in a multiple-level distribution chain normally result in higher prices for those at the bottom of the distribution chain. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple- level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[36]

117.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in

---

[36] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[37]

118.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market for Replacement Tires. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of Replacement Tires to large buyers on the price of Replacement Tires to consumers while controlling for the impact of other price-determining factors.

119.    The precise amount of the overcharge impacting the prices of Replacement Tires can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

120.    By reason of the violations of the antitrust, consumer protection, and unjust enrichment laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their property, having paid higher prices for Replacement Tires than they would have paid in the

---

[37] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

### G. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

#### i. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims

121.    Plaintiffs repeat and re-allege the allegations set forth above. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) January 30, 2024, when the EC announced it was carrying out raids of tire manufacturers for price coordination.[38]

122.    Plaintiffs and members of the Classes are consumers that purchased Replacement Tires not for resale. They had no direct contact or interaction with the Defendants and had no means by which they could have discovered the Replacement Tires combination and conspiracy described in this Complaint before January 30, 2024.

123.    No information in the public domain was available to Plaintiffs and members of the Classes concerning the combination or conspiracy alleged herein prior to January 30, 2024 when the EC issued a press release on the unannounced inspections of tire manufacturers. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of the Defendants or their co-conspirators' dealings with competitors or direct purchasers, much less the fact that the Defendants and their co-conspirators had engaged in the combination

---

[38] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561

and conspiracy alleged herein.

124.    For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run until, at the earliest, January 30, 2024.

ii.    **Fraudulent Concealment Tolled the Statute of Limitations**

125.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until January 30, 2024 when the alleged conspiracy was first made public.

126.    Before that time, Plaintiffs and the members of the Classes were unaware of the Defendants' unlawful conduct and did not know before then that they were paying supra-competitive prices for Replacement Tires throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by the Defendants' unlawful conduct.

127.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

128.    In addition to the foregoing acts of fraudulent concealment, by their very nature, the Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. Replacement Tires are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes considered the Replacement Tires industry to be a competitive industry. The Defendants met and communicated in secret and agreed to keep the facts about their collusive

conduct from being discovered by any member of the public or by Replacement Tire retailers with whom they did business. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of the Defendants' Replacement Tire prices before January 30, 2024, at the earliest.

129.   Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

130.   Because the alleged conspiracy was self-concealing and affirmatively concealed by the Defendants and its co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until, at the earliest, January 30, 2024, when evidence of Defendants' conspiracy was first made public.

131.   For these reasons, the statute of limitations applicable to Plaintiffs and the Classes' claims was tolled and did not begin to run until January 30, 2024.

**H.  CAUSES OF ACTION**

**First Cause of Action**
**Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)**
**Restraint of Trade**
**(on behalf of Plaintiffs and the Nationwide Injunctive Class)**

132.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

133.   The Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of

the Sherman Act (15 U.S.C. § 1).

134.    The acts done by the Defendants as part of, and in furtherance of, its and its co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

135.    During the Class Period, the Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially maintain prices for Replacement Tires, thereby creating anticompetitive effects.

136.    The anticompetitive acts were intentionally directed at the United States market for Replacement Tires and had a substantial and foreseeable effect on interstate commerce by fixing, artificially raising, maintaining and/or stabilizing prices, rigging bids for, and allocating the market for Replacement Tires throughout the United States.

137.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Replacement Tires.

138.    As a result of the Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Injunctive Class who purchased Replacement Tires have been harmed by being forced to pay inflated, supra-competitive prices for Replacement Tires.

139.    In formulating and carrying out the alleged agreement, understanding and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

140.    The Defendants and their co-conspirators' conspiracy had the following effects,

41

among others:

  a. Price competition in the market for Replacement Tires has been restrained, suppressed, and/or eliminated in the United States;

  b. Prices for Replacement Tires sold by the Defendants and their co-conspirators have been maintained at artificially high, non-competitive levels throughout the United States; and

  c. Plaintiffs and members of the Nationwide Injunctive Class who purchased Replacement Tires indirectly from the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

141. Plaintiffs and members of the Nationwide Injunctive Class have been injured and will continue to be injured in their business and property by paying more for Replacement Tires purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

142. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

143. Plaintiffs and members of the Nationwide Injunctive Class are entitled to an injunction against the Defendants, preventing and restraining the violations alleged herein.

<u>**Second Cause of Action**</u>
**Violation of the State Antitrust Laws**
**(on behalf of Plaintiffs and the Damages Class or, Alternatively, on Behalf of the State Damages Classes)**

144. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

145. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Replacement Tires in

unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

146. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Replacement Tires in the United States.

147. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      a.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Replacement Tires at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Replacement Tires sold in the United States;

      b.      allocating products in the United States in furtherance of their agreements; and

      c.      participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

148. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

149. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

150.    The Defendants have entered into an unlawful agreement in restraint of or to monopolize trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

      a.     The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Arizona; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

      b.     In violation of Arizona Revised Statutes § 44-1403, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

      c.     During the Class Period, the Defendants' illegal conduct substantially affected Arizona commerce.

      d.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      e.     By reason of the foregoing, the Defendants entered into agreements in

restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

151.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

    a.    During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. The Defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Replacement Tires at supra-competitive levels; to prevent competition in the sale of Replacement Tires; and to pool, combine, and directly and indirectly unite their interests connected with the sale of Replacement Tires to elevate the price at which Replacement Tires are sold.

    b.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Replacement Tires.

    c.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices

45

and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Replacement Tires; and (2) Allocating among themselves the production of Replacement Tires.

d.   The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of Replacement Tires has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Replacement Tires sold by the Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Replacement Tires directly or indirectly from the Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

*e.*   By virtue of the conduct alleged herein, the Defendants have entered into contracts, in concerted action with others, where the effect of such contract was to substantially lessen competition or tended to create a monopoly in a line of trade or commerce in California in violation of Section 16720, *et seq.*

f.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Replacement Tires than they otherwise would have paid in the absence of the Defendants' unlawful conduct. As a result of the Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the

46

Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

152.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of Connecticut General Statutes §§ 35-26 *et seq.*

a.  Connecticut's legislature conferred broad standing under the Connecticut Antitrust Act based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace.

b.  Under the Connecticut Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. Conn. Gen. Stat. § 35-46a.

c.  Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful. Conn. Gen. Stat. § 35-26.

d.  Every contract, combination, or conspiracy to monopolize, or attempt to monopolize, or monopolization of any part of trade or commerce is unlawful. Conn. Gen. Stat. § 35-27.

e.  Every contract, combination, or conspiracy that has the purpose of effect of fixing, controlling, or maintaining prices in any part of trade or commerce; or of fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of any part of trade or commerce, is also unlawful. Conn. Gen. Stat. § 35-28.

f.  Defendants made contracts or engaged in a combination or conspiracy with

        each other by maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of Replacement Tires for the purpose of, and which had the desired effect of, fixing, controlling, or maintaining prices for Replacement Tires within the intrastate commerce of Connecticut, and to monopolize and attempt to monopolize said commerce.

g.     Plaintiffs purchased Replacement Tires within the State of Connecticut during the Class Period. But for Defendants' conduct set forth herein, the price of Replacement Tires would have been lower, in an amount to be determined at trial.

h.     Plaintiffs and members of the Class were injured with respect to purchases of Replacement Tires in Connecticut and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs, and injunctive relief.

i.     Sec. 35-44b. Judicial construction of Connecticut Antitrust Act. It is the intent of the General Assembly that in construing sections 35-24 to 35-46, inclusive, the courts of this state shall be guided by interpretations given by the federal courts to federal antitrust statutes.

153.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

a.     The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Replacement Tire prices

were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.  In violation of District of Columbia Code Annotated § 28-4503, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.  During the Class Period, the Defendants' illegal conduct substantially affected District of Columbia commerce.

d.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

154.  The Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Illinois Antitrust Act, 740 ILCS10/1, *et seq.*

    a.    The Illinois Antitrust Act, 740 ILCS10/1, *et seq.*, aims to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740 ILCS 10/2.

    b.    Plaintiffs purchased Replacement Tires within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price for Replacement Tires would have been lower, in an amount to be determined at trial.

    c.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

    d.    Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling, or maintaining prices for Replacement Tires sold, and/or for allocating products within the intrastate commerce of Illinois.

    e.    Defendants further unreasonably restrained trade or commerce and established, maintained, used, and attempted to acquire monopoly power over the market for Replacement Tires in Illinois for the purpose of

excluding competition, in violation of 740 ILCS 10/3 § 3(3).

155.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

    a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Iowa; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b.    In violation of Iowa Code § 553.5, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within Iowa, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

    c.    During the Class Period, the Defendants' illegal conduct substantially affected Iowa commerce.

    d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    e.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly,

Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

156.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

a.    During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Kansas Statutes Annotated, § 50-101. The Defendants have acted in violation of § 50-101 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Replacement Tires at supra-competitive levels; to prevent competition in the sale of Replacement Tires; and to pool, combine, and directly unite their interests in connection with the sale of Replacement Tires to elevate the price at which Replacement Tires are sold.

b.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Kansas; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

c.    During the Class Period, the Defendants' illegal conduct substantially affected Kansas commerce.

d.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

157.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

a.   The Defendants entered into a combination in restraint of trade in violation of Maine Rev. Stat. Ann. 10, § 1101.

b.   The Defendants further monopolized, attempted to monopolized, and combined and conspired together to monopolize trade in Replacement Tires including with the State of Maine in violation of Maine Rev. Stat. Ann. 10, § 1102.

c.   The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Maine; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

d. During the Class Period, the Defendants' illegal conduct substantially affected Maine commerce.

e. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

f. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

158. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maryland Antitrust Act, Maryland Code, Com. Law § 11-204, *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Maryland; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maryland; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b. During the Class Period, the Defendants' illegal conduct substantially affected Maryland commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class

have been injured in their business and property and are threatened with further injury.

    c.    By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of the Maryland Antitrust Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maryland law.

159.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

    a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Michigan; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b.    In violation of Michigan Compiled Laws Annotated, § 445.773, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within Michigan, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

    c.     During the Class Period, the Defendants' illegal conduct substantially affected Michigan commerce.

    d.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    e.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

160.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

    a.     The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

    b.     In violation of Minnesota Statutes 325D.52, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of

which occurred within Minnesota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.    During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce.

d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

161.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

b.    In violation of Mississippi Code Annotated § 75-21-3, the Defendants

monopolized and attempted to monopolize the sale of Replacement Tires in the Replacement Tires market, a substantial part of which occurred within Mississippi, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c. During the Class Period, the Defendants' illegal conduct substantially affected Mississippi commerce.

d. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

162. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement

Tires.

b.    In violation of Nebraska Revised Statute § 59-802, the Defendants monopolized, attempted to monopolize, and combined or conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within Nebraska, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.    During the Class Period, the Defendants' illegal conduct substantially affected Nebraska commerce.

d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

163.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout

Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.  In violation of Nevada Revised Statutes Annotated § 598.60(1)(e), the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.  During the Class Period, the Defendants' illegal conduct substantially affected Nevada commerce.

d.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

164.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

a.  The Defendants' combination or conspiracy had the following effects: (1)

Replacement Tires price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.  In violation of New Hampshire Revised Statutes § 356:3, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within New Hampshire, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.  During the Class Period, the Defendants' illegal conduct substantially affected New Hampshire commerce.

d.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

165.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

a.      The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout New Mexico; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.      In violation of New Mexico Statutes § 57-1-2, the Defendants monopolized, attempted to monopolize, and conspired and combined to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.      During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce.

d.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

166.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

a.   The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout New York; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires when they purchased Replacement Tires, or purchased products that were otherwise of lower quality than they would have been absent the Defendants' and their co-conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

b.   The Defendants entered into a contract, agreement, arrangement, or combination with at least one other person whereby:

i.   A monopoly in the Replacement Tires market, substantially affecting commerce in New York, was established or maintained; (b) Competition or the free exercise of conduct in the Replacement Tires market, substantially affecting commerce in New York, was

restrained; or (c) Competition was restrained for the purpose of establishing or maintaining a monopoly or unlawfully interfering with the free exercise of conduct in the Replacement Tires market.

c.      During the Class Period, the Defendants' illegal conduct substantially affected New York commerce.

d.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

167.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1.1, *et seq.*

a.      The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout North Carolina; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for

Replacement Tires.

b.     In violation of North Carolina General Statutes § 75-2.1, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within North Carolina, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.     During the Class Period, the Defendants' illegal conduct substantially affected North Carolina commerce.

d.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

168.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

a.     The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout North Dakota; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout

North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.   In violation of North Dakota Code § 51-08.1-03, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within North Dakota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.   During the Class Period, the Defendants' illegal conduct had a substantial effect on North Dakota commerce.

d.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

169.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

a.   The Defendants' combination or conspiracy had the following effects: (1)

Replacement Tires price competition was restrained, suppressed, and eliminated throughout Oregon; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.      In violation of Oregon Revised Statutes § 646.730, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within Oregon, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.      During the Class Period, the Defendants' illegal conduct had a substantial effect on Oregon commerce.

d.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

170.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

    a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout South Dakota; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b.    In violation of South Dakota Codified Laws § 37-1-3.2, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within South Dakota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

    c.    During the Class Period, the Defendants' illegal conduct had a substantial effect on South Dakota commerce.

    d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    e.    By reason of the foregoing, the Defendants have entered into agreements in

restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

171.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Tennessee; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.    The Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within Tennessee, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market, such that in place of a free, open and competitive market, a monopoly in the Tennessee market has been maintained.

c.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Tennessee commerce.

69

d.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

172.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

a.     The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Utah; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.     In violation of Utah Code Annotated § 76-10-3104, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Utah commerce.

d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, the Defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

173.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Vermont; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Vermont commerce.

c.    As a direct and proximate result of the Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

174.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

a.      The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout West Virginia; (2)  Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.      In violation of West Virginia Code § 47-18-4, the Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within West Virginia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

    c.    During the Class Period, the Defendants' illegal conduct had a substantial effect on West Virginia commerce.

    d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    e.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

175.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq.*

    a.    The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Replacement Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b.    In violation of Wisconsin Statutes § 133.03, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a

substantial part of which occurred within Wisconsin, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.      During the Class Period, the Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

d.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

176.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Replacement Tires than they otherwise would have paid in the absence of the Defendants' unlawful conduct. This injury is of the type that the antitrust laws of the above states were designed to prevent and flows from that which makes the Defendants' conduct unlawful.

177.    In addition, the Defendants have profited significantly from the aforesaid conspiracy. The Defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

178.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above

jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**Third Cause of Action**
**Violation of State Consumer Protection Laws**
**(on behalf of Plaintiffs and the Damages Class or, Alternatively, on Behalf of the State Damages Classes)**

179.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

180.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

181.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, e*t seq.*

> a.    The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Replacement Tires were sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

> b.    The Defendants aforementioned conduct constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law.

> c.    The Defendants' unlawful conduct had the following effects in Alaska: (1) price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

d.   During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and consumers.

e.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

182.   The Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

a.   The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Replacement Tires were sold, distributed, or obtained in Arkansas and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

b.   The Defendants aforementioned conduct constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

c.   The Defendants unlawful conduct had the following effects: (1) Replacement Tires Products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Replacement Tires Products prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

d.      During the Class Period, the Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

e.      As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

f.      The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

183.   The Defendants have engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

a.      During the Class Period, the Defendants marketed, sold, or distributed Replacement Tires in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

b.      The Defendants established, maintained, or used a monopoly, or attempted

to establish a monopoly, of trade or commerce in the Replacement Tires market, a substantial part of which occurred within California, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from the Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

d. The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of the Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

e. The Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable,

unlawful or fraudulent.

f.      The Defendants' acts or practices are unfair to purchasers of Replacement Tires in the State of California within the meaning of Section 17200, California Business and Professions Code.

g.      The Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

h.      Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business acts or practices.

i.      The illegal conduct alleged herein is continuing and there is no indication that the Defendants will not continue such activity into the future.

j.      The unlawful and unfair business practices of the Defendants have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially inflated prices for Replacement Tires. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

k.      The conduct of the Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

l.      As alleged in this Complaint, the Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by the Defendants' unfair competition. Plaintiffs and the members of the Damages

79

Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

184.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq.*

a.    The Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as an actual or potential purchaser of the Defendants' goods and which caused Plaintiffs to suffer injury.

b.    Defendants made efforts to conceal their agreements from Plaintiffs.

c.    Defendants' unlawful conduct had the following effects in Colorado: (1) price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tires prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

d.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

e.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6- 1-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

185.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

a.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Replacement Tires were sold, distributed, or obtained in the District of Columbia.

b.    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Replacement Tires. The Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Replacement Tires because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. The Defendants' conduct with regard to sales of Replacement Tires, including its illegal conspiracy to secretly fix the price

of Replacement Tires at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiffs and the public. The Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Replacement Tires.

c.      The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

d.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

186.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

      a.    The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Florida; (2)  Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

      b.    During the Class Period, the Defendants' illegal conduct substantially affected Florida commerce and consumers.

      c.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

      d.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

187.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

a.   The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Hawaii; (2)  Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

b.   In violation of Hawaii Revised Statutes § 480-9, the Defendants monopolized, attempted to monopolize, and combined and conspired together to monopolize trade or commerce in the Replacement Tires market, a substantial part of which occurred within Hawaii, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Replacement Tires market.

c.   During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

e.   The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes §§ 480-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief

available under that statute.

188. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

    a.    The Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

    b.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Replacement Tires were sold, distributed, or obtained in Massachusetts and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

    c.    The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    d.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

e.     The Defendants have been or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the Defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days have passed since such demand letters were served, and each of the Defendants served has failed to make a reasonable settlement offer.

f.     By reason of the foregoing, the Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. The Defendants and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

189.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*

a.     The Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as purchasers of the Defendants' goods, and which caused Plaintiffs to suffer injuries.

b.     The Defendants made efforts to conceal their agreements from Plaintiffs and the members of the Damages Class.

c.     The Defendants' unlawful conduct had the following effects in Minnesota:

(1) price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

d. During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce and consumers.

e. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

190. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

a. Plaintiffs and the Damages Class purchased Replacement Tires for personal, family, or household purposes.

b. The Defendants engaged in the conduct described herein in connection with the sale of Replacement Tires in trade or commerce in a market that includes Missouri.

c. The Defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which

Replacement Tires were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

d.      The Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Replacement Tires. It concealed, suppressed, and omitted facts that would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Replacement Tires they purchased.

e.      The Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Replacement Tires by making public statements that were not in accord with the facts.

f.      The Defendants' statements and conduct concerning the price of Replacement Tires were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Replacement Tires at prices established by a free and fair market.

g.      The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Missouri; (2)  Replacement Tire prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

h.      The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

i.      As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

j.      Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

191.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont.

Code, §§ 30-14-101, *et seq.*

    a.    The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Montana; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b.    During the Class Period, The Defendants' illegal conduct substantially affected Montana commerce and consumers.

    c.    As a direct and proximate result of The Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

    d.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

192.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*

    a.    Defendants' unlawful conduct had the following effects in Nebraska: (1)

price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

b.     During the Class Period, Defendants marketed, sold, or distributed Replacement Tires in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

c.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

193.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

a.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Replacement Tires were sold, distributed or obtained in New Mexico and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

b.     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3,

91

in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Replacement Tires as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Replacement Tires. The Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Replacement Tires because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. the Defendants' conduct with regard to sales of Replacement Tires, including its illegal conspiracy to secretly fix the price of Replacement Tires at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiffs and the public. The Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Replacement Tires.

    c.       The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout New Mexico; (2)  Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    d.       During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

    e.       As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

    f.       the Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

194.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

    a.       The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Replacement Tires were

sold, distributed or obtained in New York and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

b.    The Defendants and their co-conspirators made public statements about the prices of Replacement Tires and products containing Replacement Tires that the Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Replacement Tires and products containing Replacement Tires; and the Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c.    Because of the Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Replacement Tires were misled to believe that they were paying a fair price for Replacement Tires or the price increases for Replacement Tires were for valid business reasons; and similarly situated consumers were potentially affected by the Defendants' conspiracy.

d.    The Defendants knew that its unlawful trade practices with respect to pricing Replacement Tires would have an impact on New York consumers and not just the Defendants' direct customers.

e.    The Defendants knew that their unlawful trade practices with respect to pricing Replacement Tires would have a broad impact, causing consumer

class members who indirectly purchased Replacement Tires to be injured by paying more for Replacement Tires than they would have paid in the absence of the Defendants' unlawful trade acts and practices.

f.      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

g.      The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout New York; (2)  Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

h.      During the Class Period, the Defendants marketed, sold, or distributed Replacement Tires in New York, and the Defendants' illegal conduct substantially affected New York commerce and consumers.

i.      During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates dominated and controlled, manufactured,

sold and/or distributed Replacement Tires in New York.

j.      Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

195.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

a.      The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Replacement Tires were sold, distributed or obtained in North Carolina and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

b.      The Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by the Defendants to cover up its illegal acts. Secrecy was integral to the formation, implementation, and maintenance of the Defendants' price-fixing conspiracy. The Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. The Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. The Defendants' public statements concerning the price of Replacement Tires created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by the Defendants' illegal conspiracy. Moreover, the Defendants deceptively concealed its unlawful activities by mutually agreeing not to divulge the existence of the conspiracy

to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

c.     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.     The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout North Carolina; (2)  Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

e.     During the Class Period, the Defendants marketed, sold, or distributed Replacement Tires in North Carolina, and the Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

f.     During the Class Period, the Defendants, directly, or indirectly, and through affiliates they dominated and controlled, manufactured, sold and/or

distributed Replacement Tires in North Carolina.

g.      Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

196.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

a.      Members of this Damages Class purchased Replacement Tires for personal, family, or household purposes.

b.      The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Replacement Tires were sold, distributed, or obtained in Rhode Island.

c.      The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Replacement Tires. The Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, it breached that duty by its silence.

The Defendants misrepresented to all consumers during the Class Period that its Replacement Tire prices were competitive and fair.

d.    The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

e.    As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

f.    The Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Replacement Tires, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Replacement Tires at prices set by a free and fair market. The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as

99

they related to the cost of Replacement Tires they purchased. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

197. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

    a. The Defendants' combination or conspiracy had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Replacement Tires.

    b. During the Class Period, the Defendants' illegal conduct had a substantial effect on South Carolina commerce.

    c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d. The Defendants have engaged in unfair competition or unfair or deceptive

acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

198.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24-1, *et seq.*

    a.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Replacement Tires were sold, distributed, or obtained in South Dakota.

    b.     The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Replacement Tires.

    c.     The Defendants misrepresented to all purchasers during the Class Period that the Defendants' Replacement Tires were competitive and fair.

    d.     The Defendants' unlawful conduct had the following effects in South Dakota: (1) price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tires were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires.

e.     The Defendants' illegal conduct substantially affected South Dakota commerce and those who purchased Replacement Tires in South Dakota.

f.     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

g.     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Replacement Tires, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Replacement Tires at prices set by a free and fair market.

h.     Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Replacement Tires they purchased.

i.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

199.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

a.     The Defendants agreed to, and did in fact, act in restraint of trade or

commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Replacement Tires were sold, distributed, or obtained in Vermont.

b.  By virtue of the conduct alleged herein, the Defendants and those acting in concert with them entered into contracts where the effect of such contract was to substantially lessen competition or tended to create a monopoly in a line of trade or commerce in Vermont in violation of Section 2453, *et seq.*, of Vermont Title 9.

c.  The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Replacement Tires. The Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, The Defendants breached that duty by its silence. The Defendants misrepresented to all consumers during the Class Period that their Replacement Tire prices were competitive and fair.

d.  The Defendants' unlawful conduct had the following effects: (1) Replacement Tires price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages

Class paid supra-competitive, artificially inflated prices for Replacement Tires.

e.    As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

f.    The Defendants' deception, including its affirmative misrepresentations and omissions concerning the prices of Replacement Tires, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Replacement Tires at prices set by a free and fair market. The Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

200.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-6-101, *et seq.*

a.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes West Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the

prices at which Replacement Tires were sold, distributed, or obtained in West Virginia.

b.      The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Replacement Tires.

c.      The Defendants affirmatively misrepresented to all purchasers during the Class Period that the Defendants' Replacement Tire prices were competitive and fair. Defendants' unlawful conduct had the following effects in West Virginia: (1) price competition for Replacement Tires was restrained, suppressed, and eliminated; (2) Replacement Tire prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Replacement Tires. The Defendants' illegal conduct substantially affected West Virginia commerce and purchasers of Replacement Tires.

d.      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

e.     The Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Replacement Tires, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Replacement Tires at prices set by a free and fair market.

f.     The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of the Replacement Tires they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code § 46A-6-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

<u>**Fourth Cause of Action**</u>
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class or, Alternatively, on Behalf of the State Damages Classes)**

201.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

202.     Plaintiffs bring this claim under the laws of each of the Indirect Purchaser States.

203.     As a result of its unlawful conduct described above, the Defendants have and will continue to be unjustly enriched. The Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Replacement Tires.

204.     The Defendants have benefited from its unlawful acts and it would be inequitable for the Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs and the members of the Damages Class for Replacement Tires.

205.     Plaintiffs and the members of the Damages Class are entitled to the amount of the

Defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a *pro rata* basis.

206.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Replacement Tires subject to the Defendants' conspiracy would have been futile.

## PRAYER FOR RELIEF

207.    Accordingly, Plaintiffs respectfully request that:

208.    The Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) and direct that reasonable notice of this action be given to each and every member of the Class as provided by Rule 23(c)(2).

209.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

       a.    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

       b.    A *per se* violation of Section 1 of the Sherman Act;

       c.    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and consumer protection laws as set forth herein; and

       d.    Acts of unjust enrichment by the Defendants as set forth herein.

210.    Plaintiffs and the members of the Damages Class recover damages, to the maximum

extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against the Defendants in an amount to be trebled to the extent such laws permit;

211.   Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

212.   The Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

213.   Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits the Defendants obtained as a result of its acts of unfair competition and acts of unjust enrichment;

214.   Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

215.   Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

216.   Plaintiffs and members of the Classes have such other and further relief as the case

may require and the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial on all claims so triable.


DATED: April 30, 2024                    Respectfully submitted,


                         By:     _/s/ Joyce Chambers Reichard_
                                 James L. Ferraro (0076089)
                                 John Martin Murphy (0066221)
                                 Joyce Chambers Reichard (0096422)
                                 **KELLEY FERRARO, LLC**
                                 Ernst & Young Tower
                                 950 Main Avenue, Suite 1300
                                 Cleveland, OH 44113
                                 Telephone: (216) 575-0777
                                 Facsimile: (216) 575-0799
                                 jmurphy@kelleyferraro.com
                                 jreichard@kelleyferraro.com

                                 Adam J. Zapala (*pro hac vice* forthcoming)
                                 Elizabeth T. Castillo (*pro hac vice* forthcoming)
                                 James G.B. Dallal (*pro hac vice* forthcoming)
                                 **COTCHETT, PITRE & McCARTHY, LLP**
                                 840 Malcolm Road, Suite 200
                                 Burlingame, CA 94010
                                 Telephone: (650) 697-6000
                                 Facsimile: (650) 697-0577
                                 azapala@cpmlegal.com
                                 ecastillo@cpmlegal.com
                                 jdallal@cpmlegal.com

                                 *Attorneys for Plaintiffs Jose Javier and Rafael Lim*